**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **CASE NO. 3:26cr94-MCR**

**CLISMA SEGOVIA,**

**Defendant.**
_________________________________/

# ORDER

Defendant Clisma Segovia is charged with possession of ammunition as an illegal alien, in violation of 18 U.S.C. §§ 922(g)(5)(A), 924(a)(8). He moves to suppress all items seized from an inventory search of his vehicle, as well as related statements, arguing they were obtained after an unlawful impoundment of his vehicle in violation of the Fourth Amendment. The Government opposes the motion. After careful consideration, the Court finds that the motion should be denied and no hearing is necessary.

## I. Background

On April 8, 2026, Segovia was arrested for drag racing on Florida Highway 98 by Sergeant Zachary Raya of the Walton County Sheriff's Office ("WCSO"), who observed the offense and stopped both vehicles involved. *See* Fla. Stat. § 316.191(2)(a) (prohibiting racing on highways). Segovia was driving one of the

vehicles, in which his girlfriend, Frances Fedullo, was a passenger. Both Segovia and Ms. Fedullo were 18 years old at the time and each was a licensed driver. Sgt. Raya made the decision to tow both vehicles before talking to the drivers. When other deputies arrived, Segovia was handcuffed and placed in the back of a patrol car. Ms. Fedullo asked a deputy if she could drive the vehicle back to their hotel in Destin, Florida, and was told she could not because it was being impounded for 30 days pursuant to Florida law, Fla. Stat. § 316.191(5)(c). Segovia asserts that the drivers of both vehicles were repeatedly told that impoundment was mandatory, that the cars would be automatically impounded for 30 days, and that the passengers would need to find a way home.

WCSO deputies inventoried Segovia's vehicle. During the inventory, deputies located a container that purported to contain cannabis oil and live resin, and because Segovia was not eligible for a medical marijuana card due to his age, a deputy advised that this would now be a probable cause search. They also located a Glock P80 handgun and Monarch 9-millimeer ammunition underneath the driver's seat. When deputies questioned Segovia about the marijuana and the handgun, he stated there was "a preroll" in the vehicle. When asked about what was under the driver's seat, Segovia responded, "that's not mine" and explained that a friend had left it in the vehicle before he travelled to Florida.

Segovia argues that the impound of his vehicle and subsequent search were unlawful and that all evidence seized and statements made as a result of that unlawful search should be suppressed as obtained in violation of his Fourth Amendment rights. *See Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963) (applying the exclusionary rule to evidence and statements resulting from an illegal search).

## II. Discussion

The Fourth Amendment protects against unreasonable searches and seizures, *see* U.S. Const. amend. IV, and evidence obtained through an illegal search or seizure, either directly or derivatively, is subject to exclusion as "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (internal quotations omitted). An automobile inventory search is "a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). This exception is justified by the need to protect public safety and as part of law enforcement's "community caretaking functions." *S. Dakota v. Opperman,* 428 U.S. 364, 368 (1976). Before impounding a vehicle, "local police departments generally follow a routine practice of securing and inventorying the automobiles' contents" for the purpose of protecting the owner's property, protecting the police from disputes over property, and protecting the police from potential danger. *Id.* at 369. Following established or standardized procedures

ensures that an inventory search is conducted in good faith and not as "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990); *see also Bertine*, 479 U.S. at 372-76 (noting nothing precludes the exercise of discretion if it is within that standardized framework and based on something other than a suspicion that evidence of criminal conduct might be found).

It is well established that the inventory of an impounded vehicle does not violate the Fourth Amendment if law enforcement had both (1) the authority to impound, and (2) followed the department's standardized procedures governing an inventory search. *United States v. Isaac*, 987 F.3d 980, 988 (11th Cir. 2021) (citing *United States v. Williams,* 936 F.2d 1243, 1248 (11th Cir. 1991)). And an officer is not constitutionally required to first offer the option of making an alternative disposition of the vehicle before impounding it, provided the decision to impound was made in good faith. *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992) (stating a good faith decision to impound is one based on standard criteria and "not solely" on suspicion of finding criminal evidence). Because an inventory search is an exception to the warrant requirement, the Government bears the burden of proof to show that the search was lawful. *Id.*

The Government argues that the impound decision was made in good faith because it was based on statutory authority, *see* Fla. Stat. § 316.191(5)(c), and that

the subsequent inventory search followed standard inventory procedures. The Court agrees.

Segovia was arrested under the drag racing statute, Fla. Stat. § 316.191(2)(a). The statute authorizes the arrest of the driver and also impoundment of the vehicle, stating, "[a]ny motor vehicle used in violation of subsection (2) may be impounded for a period of 30 business days if a law enforcement officer has arrested and taken a person into custody pursuant to this subsection." Fla. Stat. § 316.191(5)(c); *see also Morris v. State*, 958 So. 2d 598, 599 n.1 (Fla. 4th DCA 2007) (recognizing Fla. Stat. § 316.191, dealing with drag racing, as one of the few statutes that expressly authorizes impoundment). On the facts asserted, there is no dispute that the vehicle was used in the alleged offense, Segovia was arrested and taken into custody, and the statute provided clear authority for Sgt. Raya's decision to impound. While it is true that the statutory authority for impound is framed in discretionary, not mandatory, terms—that is, the vehicle used in the violation "may" be impounded for 30 days, Fla. Stat. § 316.191(5)(c)—the statute plainly provides authority for an officer's decision to impound, and Segovia does not argue otherwise. Thus, the decision to impound the vehicles was made in good faith.

Segovia nonetheless maintains that he should have been given an option to remove the car and avoid impoundment pursuant to WCSO's standard operating

procedure since he had a licensed individual present and willing to remove the vehicle.[1] This argument is rejected for two reasons. First, there is no showing, argument, or even suggestion that Sgt. Raya's decision to impound was based on anything other than the objective statutory criteria, which satisfies good faith. *See Bertine*, 479 U.S. at 376 ("There was no showing that the police chose to impound Bertine's van in order to investigate suspected criminal activity."). The Supreme Court has repeatedly stated that good faith is all that is required, and "[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Id.* at 374 (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983)). Second, in relying on the WCSO operating procedure, Segovia overlooks that the authority to impound in this instance was grounded in the statute, as just discussed, and not on application of the WCSO policy. Nonetheless, the Court notes that by its own terms, WCSO standard procedure governing the decision of whether to impound a vehicle when a driver is

---

[1] Segovia initially relied in part on *Miller v. State*, 403 So. 2d 1307, 1309 (Fla. 1981), to argue that the deputies were required to permit him an alternative to impoundment. In response, the Government correctly asserted that *Miller* is no longer good law and officers are not required to provide an alternative to impoundment, as long as they act in good faith. *See Robinson v. State*, 537 So. 2d 95, 96 (Fla. 1989) (recognizing that *Miller*, which had required officers to offer an alternative to impoundment, was no longer good law after *Colorado v. Bertine*). Segovia then filed a reply acknowledging the error of relying on *Miller*, and the Court appreciates counsel's candor.

arrested does not apply in circumstances where the vehicle itself is considered evidence. *See* ECF No. 23-1 (WCSO Standard Operating Procedures 1.24.4, Section V.A.2.c. (effective date 03/09/26): "When a person is arrested while driving or in physical control of a vehicle, and the vehicle does not contain evidence *nor is itself considered evidence*, deputies should allow the arrested person to provide an alternative to impoundment . . . .") (emphasis added). In this case, Segovia's vehicle is potentially evidence of the crime. In other words, because the offense of drag racing is committed *only* by use of a vehicle, the vehicle is expressly an instrument of the offense and thus potentially evidence itself. The statute, Fla. Stat. § 316.191(5)(c), essentially allows officers a 30-day window to investigate whether the vehicle will be needed as evidence of the drag racing crime charged.

Segovia has not argued that the inventory search itself was conducted in violation of WCSO's standardized inventory search criteria.

Accordingly, Defendant's Motion to Suppress Evidence, ECF No. 23, is **DENIED**. Trial will be set by separate order.

**DONE AND ORDERED** this 15th day of November 2026.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**